**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACK and RENEE BEAM, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | No. 07 C 1227 |
| | ) | |
| ALBERTO R. GONZALES, UNITED | ) | Judge Rebecca R. Pallmeyer |
| STATES ATTORNEY GENERAL; and | ) | |
| ROBERT LENHARD, CHAIRMAN OF THE | ) | |
| FEDERAL ELECTION COMMISSION; and | ) | |
| UNKNOWN AGENTS OF THE FEDERAL | ) | |
| BUREAU OF INVESTIGATION, in their | ) | |
| individual and official capacities,[1] | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jack and Renee Beam (the "Beams") claim to have been targeted for investigation based on their political activities and, specifically, their support for John Edwards in the 2004 presidential election. The Beams allege that the United States Attorney General, the Chair of the Federal Election Commission (the "FEC" or "Commission"), and/or certain unknown Federal Bureau of Investigation ("FBI") agents (together the "Defendants") raided the offices of a law firm with which Mr. Beam is affiliated, raided the homes of certain of the law firm's employees and associates, and seized those employees' and associates' financial records directly from their financial institutions. Plaintiffs have brought a five-count Amended Complaint seeking monetary damages, a writ of mandamus, a declaratory judgment, and other relief to remedy this allegedly wrongful conduct. Defendants move to dismiss. For the reasons explained below, the motion to dismiss is granted.

---

[1] If this case proceeds further, the court presumes that with respect to any "official capacity" claim, Michael B. Mukasey will be substituted for Alberto R. Gonzales. FED. R. CIV. P. 25(d). Likewise, David M. Mason will be substituted for Robert D. Lenhard as the FEC Chair in his official capacity. To the extent that Gonzales and Lenhard are sued in their individual capacities, each would remain a defendant.

## BACKGROUND

The allegations of Plaintiffs' Amended Complaint are presumed true and recounted in the light most favorable to Plaintiffs. The Beams are both Illinois residents. (Am. Compl. ¶ 1.) Mr. Beam is of counsel at the Detroit, Michigan law firm of Fieger, Fieger, Kenney & Johnson (the "Fieger law firm"), and Mrs. Beam is his wife. (*Id.* ¶¶ 8-9.) Geoffrey N. Fieger is the President of the Fieger law firm as well as a prominent Democrat and former Michigan gubernatorial candidate. (*Id.* ¶ 8.) On November 30, 2005, Defendant Alberto R. Gonzales, then the United States Attorney General, authorized a nighttime raid on the Fieger law firm's offices; he also authorized approximately 100 federal agents to simultaneously raid the homes of certain associates and employees of the Fieger law firm. (*Id.* ¶¶ 8-9.) Plaintiffs assert that these raids were conducted because the Fieger law firm's employees and associates–as well as the family members of those individuals–made contributions to presidential candidate John Edwards in connection with the 2004 election. (*Id.* ¶ 10.)

While at the homes of these associates and employees, the federal agents conducting the raid harassed the individuals by questioning them about which candidate they had voted for in the 2004 presidential election and about their financial support of John Edwards. (Am. Compl. ¶ 11.) The federal agents revealed that they had obtained access to the financial records of the employees and associates directly from their financial institutions and that they had obtained payroll records from the Fieger law firm's financial institution. (*Id.* ¶ 11.) The government agents never suggested to Plaintiffs or other Fieger law firm personnel that they had complied with federal statutory procedures in obtaining financial records. (*Id.* ¶¶ 12-13.)

On March 2, 2007, Plaintiffs filed an Application for Writ of Mandamus and Complaint in this court. (Docket Entry No. 1.) The Complaint named Gonzales and Robert Lenhard (then the FEC Chair), both in their official capacities. (*Id.*) On May 10, 2007, the Attorney General moved to dismiss Count I, which sought a declaratory judgment that the Attorney General and the FEC had

2

violated the Federal Campaign Finance Act. (Docket Entry No. 22.)[2] On the same date, the FEC moved to dismiss all three counts of the Complaint: Count II invoked the Administrative Procedures Act ("APA"), while Count III sought a writ of mandamus requiring the FEC to comply with the Federal Campaign Finance Act. (Docket Entry No. 27.) On June 22, 2007, the court dismissed Count I, noting that many factual matters Plaintiffs emphasized in opposing the motion did not appear as allegations in the complaint. (Docket Entry No. 46.) The court reserved ruling on whether Counts II and III stated a claim for relief.

Plaintiffs filed a First Amended Complaint on June 29, 2007, this time asserting five counts against Gonzales, Lenhard, and certain unnamed FBI agents, all in their official and individual capacities. (Am. Compl.) In Count I, Plaintiffs allege violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.* In Count II, they allege retaliation for engaging in constitutionally protected activity. In Count III, Plaintiffs allege violations of the Federal Election Campaign Act ("FECA" or the "Act"), 2 U.S.C. § 431 *et seq.* In Count IV, they invoke the APA, 5 U.S.C. § 701 *et seq.* In Count V, Plaintiffs invoke the mandamus statute, 28 U.S.C. § 1361. To remedy the federal officers' alleged wrongdoing, Plaintiffs seek (a) a declaration that Defendants' conduct violates FECA, (b) a writ of mandamus compelling the FEC to comply with FECA, (c) monetary damages as authorized by law, and (d) any other relief the court deems appropriate. (Am. Compl. at 10-11.)

Both the FEC and the Attorney General moved to dismiss Plaintiffs' Amended Complaint on August 23, 2007. First, they contend that the Amended Complaint should be dismissed pursuant to Rule 12(b)(1), because Plaintiffs lack standing and their claims are not ripe. (AG Mem. at 4-12.) The FEC and the Attorney General also argue that Plaintiffs failed to state a claim for

---

[2]     Although Plaintiffs refer to the Federal Campaign Finance Act in their Complaint and the Federal Election Campaign Act in their Amended Complaint, they cite to the same statutory provisions.

relief, and therefore that the claims should be dismissed pursuant to Rule 12(b)(6). (AG Mem. at 12-19; FEC Mem. at 5-17.) The court begins, as it must, by analyzing whether it has subject matter jurisdiction over Plaintiffs' claims. For the reasons explained below, the court concludes it lacks jurisdiction to consider the merits of Plaintiffs' claims against the Attorney General, the FEC Chair, or the unnamed FBI agents.

## DISCUSSION

### I.    Plaintiffs' Complaint

#### A.    Pleading Requirements

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must provide a "short and plain statement of the claim" in order to give the defendant "fair notice of what the suit is about and the grounds on which it rests." *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). When determining whether it has subject matter jurisdiction, the court accepts the Amended Complaint's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in Plaintiffs' favor. *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1001 (7th Cir. 2004). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). Moreover, federal courts "presume that federal courts lack jurisdiction 'unless the contrary appears affirmatively from the record.'" *Sprint*, 361 F.3d at 1001 (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotations marks and citations omitted)). As a result, it is the Plaintiffs' "responsibility to clearly allege facts that invoke federal court jurisdiction." *Id.; RWB Servs., LLC v. Rally Capital Servs., LLC*, 502 F. Supp. 2d 787, 790 (N.D. Ill. 2007) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.") (citation omitted).

### B. Supplemental Materials

Plaintiffs have attached certain supplementary documents to their Response, prompting the Attorney General to argue that these materials should not be considered on a motion to dismiss. (AG Reply at 3-4.) In particular, Plaintiffs have attached an August 2007 indictment of Fieger and Vernon Johnson, which arises from the investigation at issue in this case (Exhibit A); a May 2007 affidavit of Jill Simpson related to the investigation of one-time Alabama Governor Don Siegelman (Exhibit B); an October 2004 order of the United States District Court for the Northern District of Alabama dismissing with prejudice the indictment against Siegelman and Paul Harmick (Exhibit C); a September 2007 New York Times article by Adam Nossiter regarding the prosecution of Siegelman (Exhibit D); a February 2007 article by Donald C. Shields and John F. Cragan regarding investigations conducted by George W. Bush's Department of Justice (Exhibit E); and a September 2007 article by Scott Horton in Harper's Magazine regarding politically-motivated investigations allegedly conducted by the Bush Justice Department (Exhibit F). The court may take judicial notice of matters in the public record, *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003), such as the indictment. Thus, the court will consider Exhibit A.

As for Exhibits B through F, whether the court can consider this evidence depends on the adequacy of the allegations in the Beams' Amended Complaint. When a court analyzes a motion to dismiss for lack of subject matter jurisdiction, the court treats the Rule 12(b)(1) motion like any other motion to dismiss and assumes that the allegations of the complaint are true. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). If those allegations are adequate to establish subject matter jurisdiction, a party challenging the complaint may offer supporting affidavits and other materials for the court's consideration. *Id.* Here, the Defendants challenge both the sufficiency of the allegations in the complaint and the factual basis for the Beams' invocation of subject matter jurisdiction. *United Phosphorus* does not address whether the party seeking to invoke federal jurisdiction may provide documentary evidence to

buttress the factual allegations of the complaint, but the court believes that the plaintiffs may do so in this case. *See Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) ("The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."). In *Capitol Leasing*, the court noted that a subject matter jurisdiction challenge must always be brought as a motion to dismiss rather than a motion for summary judgment, because a court may not consider the merits of an action if it lacks jurisdiction; thus, "jurisdiction is inappropriate for summary judgment." *Id.* In other words, a court could never evaluate documentary evidence when determining whether it has subject matter jurisdiction if it could not do so at the motion to dismiss stage. To the extent the documentary evidence is useful, the court will therefore consider it when analyzing the factual basis of the Beams' attempt to invoke federal jurisdiction.

That said, information regarding other allegedly wrongful investigations conducted by the Department of Justice cannot afford this court subject matter jurisdiction over the Beams' Amended Complaint. Thus, Exhibits B through F are not relevant to the jurisdictional inquiry. The court will, however, consider a September 2006 letter from then-FEC Chair Michael Toner to Jack Beam, which Plaintiffs attached to their Motion for Declaratory Judgment. Because both the Plaintiffs and Defendant FEC Chair discuss the contents of that letter during this briefing, it is useful to consider the contents of the letter itself.

## II.    Subject Matter Jurisdiction

### A.    Standing

The Beams, as the parties invoking federal jurisdiction, bear the burden of demonstrating that they have standing. *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004). To do so, they must demonstrate "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the

injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Id.* (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)) (additional citations omitted). The dispute in this case revolves around the first element of standing: whether the Beams have suffered injury in fact. A litigant has suffered an injury in fact if he or she "has sustained or is immediately in danger of sustaining some direct injury." *Id.* (citation omitted). In other words, the injury must be more than speculative. *Id.*

Plaintiffs assert that they are "the target[s] of a politically motivated investigation initiated by Defendants because of Plaintiffs' political activities and support of former presidential and vice presidential candidate John Edwards." (Am. Compl. ¶ 1.) But even assuming they have been targeted for investigation, Plaintiffs fail to identify any harm they have suffered, or are in immediate danger of suffering, as a result of this investigation. Plaintiffs allege that the Attorney General personally authorized a "nighttime raid" on the Fieger law firm's offices and on the homes of Fieger law firm "associates and employees." (*Id.* ¶¶ 8-9.) During this "nighttime raid," Plaintiffs assert, the federal agents conducting the raids "harassed the individuals." (*Id.* ¶ 11.) The federal agents allegedly told the individuals whose homes they raided that they had obtained "the Fieger law firm employees' and associates' financial records. . . ." (*Id.* ¶ 11.) Significantly, however, Plaintiffs do not allege that their *own* home was raided. Because the Beams' home was apparently not raided on the night in question, the Beams do not allege that they themselves were harassed by the federal agents or told that their financial records had been seized. Nor do they allege that the federal agents informed others, whose homes were in fact raided, that the Beams' bank records had been seized.

Nor, indeed, have Plaintiffs alleged that the government actually did seize their financial records. Plaintiffs assert that the government obtained financial records of "over 100 individuals," (Am. Compl. ¶ 13), but they never specifically allege that the Attorney General, the FEC Chair, or any other government agent seized their own bank records in particular. Instead, Plaintiffs simply

assume this to be true for purposes of the Amended Complaint.  (*See  id.* ¶ 15 ("In order to determine how the government secretly obtained their financial records, Plaintiffs Jack and Renee Beam asked their financial institution . . . ."); ¶ 24 ("The only other method by which Defendants could have secretly obtained Plaintiffs' financial records is. . . ."); ¶ 26 ("Defendants' act of secretly accessing Plaintiffs' financial records . . . is a gross violation of federal law"); ¶ 31 (". . . sometime after Defendant[s]. . . secretly obtained Plaintiffs' private banking records. . . .").)  Their assumption that the government must have obtained their bank records is not enough to establish an injury in fact.  And without any affirmative allegation that the Beams themselves suffered an injury in fact, Plaintiffs lack standing.

Even if these indirect assumptions were sufficient to suggest that government agents had seen financial records, Defendants argue, there would still be no basis to conclude that the Beams have standing, because the Beams have suffered no harm.  (AG Mem. at 11-12.)  In other words, there is no factual basis for any allegations that Plaintiffs have been injured.  (*Id.*)  Where the factual basis for plaintiff's standing is challenged, the plaintiff must present "competent proof," or a showing by the preponderance of the evidence, of standing.  *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).  "'Competent proof' requires a showing by a preponderance of the evidence that standing exists."  *Perry v. Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.  And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.").

Plaintiffs insist they have in fact been injured.  Specifically, they believe that various White House officials have been directing certain Department of Justice investigations, including campaign finance investigations.  (Pls.' Resp. at 7-10.)  According to Plaintiffs' briefing, this is part

of a nationwide campaign to chill Democrats' First Amendment expression. (*Id.*) The apparent basis for Plaintiffs belief that they were drawn into this pattern of politically-motivated prosecutions is a "threat letter" from the FEC. Plaintiffs explain:

> During the course of its crusade, the DOJ revealed that they had secretly obtained the bank records for dozens of individuals without a trace of a warrant or subpoena or other document. Shortly thereafter, [then-]FEC Chairman Michael Toner (former General Counsel of the Bush-Cheney team) sent a threat letter to Plaintiffs Jack and Renee Beam accusing them of violating federal campaign finance laws. So how did the FEC obtain information about political contributions made by Jack and Renee Beam? How did the FEC obtain financial records about monies paid either to or from the Beams from the Fieger law firm. [sic] The most likely answer is that the DOJ illegally gathered such private financial records in violation of federal law and then sent their illegal fruits to the FEC.

(Pls.' Resp. at 2-3.) According to Plaintiffs, this threat letter "made clear that the FEC had in its possession Plaintiffs' bank records." (*Id.* at 13.) Having reviewed the letter, the court disagrees.

In the letter, dated September 26, 2006, Toner (notably not the FEC Chair named in his individual capacity in this lawsuit) notifies Mr. Beam that on September 19 of that year the FEC had learned that there is reason to believe Mr. Beam violated 2 U.S.C. § 441f. (Letter from M. Toner to J. Beam of 9/26/06.) Section 441f of FECA makes it unlawful to make contributions in the name of another person, or to knowingly accept such a contribution. Toner's letter makes no mention of Plaintiffs' bank records; instead, the letter represented that "[t]his finding was based on information ascertained by the Commission in the normal course of carrying out its supervisory responsibilities." (*Id.*) While the letter purports to attach a "Factual and Legal Analysis, which more fully explains the Commission's finding," that Analysis is not before the court. (*Id.*) According to the statements in the September 26 letter, however, the FEC came upon the information regarding Mr. Beam's alleged FECA violations while conducting its ordinary responsibilities. Plaintiffs offer no basis for their assumption that the FEC could only have come upon this information by seizing the Beams' bank records. And Plaintiffs themselves emphasize the investigation of Fieger's or the Fieger law firm's financial records. The court assumes that the FEC could have uncovered information in

those records, or in the Edwards campaign's public filings, that might have generated suspicion that Mr. Beam violated § 441f. Plaintiffs thus offer no more than unsubstantiated speculation that the FEC actually obtained their bank records illicitly. This falls far short of establishing injury in fact by a preponderance of the evidence. The court concludes Plaintiffs have not met the requirements of Article III standing.

## B.    Ripeness

The Attorney General also argues that the court lacks jurisdiction because Plaintiffs' claims are not ripe for review. Essentially, the Attorney General's position is that Plaintiffs' claims implicate an ongoing federal investigation, and that the court should not interfere with an ongoing criminal investigation or prosecution. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. . . ." *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 807 (2003) (internal quotation marks and citation omitted). *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) articulates what remains the governing ripeness doctrine in areas of administrative review. "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149, cited in 13A Charles Alan Wright et al., *Federal Practice & Procedure* § 3532.6, at 194 (2d ed. 1984); *see also Nat'l Park*, 538 U.S. at 808. The *Abbott* court also noted that "injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott*, 387 U.S. at 148. This warning is particularly significant with regard to Counts III, IV, and V of Plaintiffs' Amended Complaint, each of which seeks equitable relief. With this caution in mind, the court considers the issues of fitness for judicial decision and hardship to the parties.

### 1.    Fitness for Judicial Decision

In *Abbott*, the court found an issue fit for judicial review where the issue tendered was purely

legal, *Abbott*, 387 U.S. at 149; the court would be reviewing a final agency action, *id.*; and the agency action had a direct and immediate impact on the petitioners, *id.* at 152. None of these criteria is satisfied here. First, the issue before the court is not purely legal: there are many factual disputes among the parties, including who initiated the investigation, why, how it was conducted, and what its current status is. The thrust of Plaintiff's Amended Complaint is that the investigation was motivated by a desire to retaliate against Plaintiffs for the support of John Edwards, and this question of intent is clearly factual. Second, an investigation "is quintessentially non-final as a form of agency action." *Univ. of Med. & Dentistry v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (citation omitted); *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("An agency's initiation of an investigation does not constitute final agency action."). Instead, the decision to investigate is preliminary and not subject to judicial review. *Corrigan*, 347 F.3d at 69. Thus, not even Toner's letter to Mr. Beam, notifying him that an investigation is underway, ripens the dispute. Third, as discussed above, Plaintiffs lack standing precisely because they have failed to demonstrate any direct and immediate impact that the alleged investigation has had on their rights or interests. Accordingly, Plaintiffs' allegations are not ripe, under the governing standard set forth in *Abbott.*

Moreover, even where the *Abbott* criteria are satisfied, an action may not be not ripe for judicial decision where "further factual development would 'significantly advance our ability to deal with the legal issues presented.'" *Nat'l Park*, 538 U.S. at 812 (quoting *Duke Power Co. v. Carolina Environ. Study Group, Inc.*, 438 U.S. 59, 82 (1978)) (additional citations omitted). Here, further factual development would undoubtedly illuminate the legal issues before the court. For example, the court does not yet know what, if any, charges may be brought against the Beams. *See In re Stanford*, 68 F. Supp. 2d 1352, 1359 (N.D. Ga. 1999) (where one of the targets of a criminal investigation sought an order disqualifying the United States Attorney's office, the court observed: "The issues in this matter are not yet ripe for judicial decision because this Court does not know the

nature of the charges that may be lodged against" targets of criminal investigation.).  Because the Attorney General and FEC have not yet made decisions about whether or how to enforce applicable laws, the court cannot assess the impact of any agency misconduct on the Beams.

In fact, as a general rule, authorities note that "courts should not intrude during the investigative stage" of an adjudicatory proceeding. 13A Charles Alan Wright et al., *Federal Practice & Procedure* § 3532.6, at 199 (2d ed. 1984).  For the courts to interfere in an ongoing agency investigation "might hopelessly entangle the courts in areas that would prove to be unmanageable and would certainly throw great amounts of sand into the gears of the administrative process." *Corrigan*, 347 F.3d at 64 (citation omitted); *see also Jobs, Training & Servs. v. East Tex. Council of Gov'ts*, 50 F.3d 1318, 1325 (5th Cir. 1995) (holding that, where a federal agency is engaged in a continuing factual investigation, judicial intervention may hinder effective administration of the agency's duties).  This reflects a broad understanding that "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985).

In response, Plaintiffs note that the grand jury returned an indictment against Fieger and Vernon Johnson –also a partner in the Fieger law firm. (Indictment in *United States v. Fieger*, Case No. 2:07-cr-20414, Ex. A to Pls.' Resp.)    The counts against Fieger and Johnson include conspiracy, making and causing conduit campaign contributions, causing false statements, and obstruction of justice. (*Id.*)  Now that an indictment is pending, but Plaintiffs themselves have not been named, Plaintiffs suggest that the court need not abstain from hearing Plaintiffs' claims. (Pls.' Resp. at 2.)  Plaintiffs cite *Steffel v. Thompson*, where the Supreme Court held that "[w]hen no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system. . . ." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).  *Steffel*–a case about state criminal proceedings–is not on point here, as the fact that no federal criminal proceedings have been initiated against the Beams does not establish that the government's investigation is complete.  The question before

the court is whether to intervene in an ongoing federal criminal *investigation*, an issue *Steffel* does not address. Plaintiffs also urge out that it cannot be that the government may violate individual rights with impunity so long as it declines to indict the targets of its investigations. (Pls.' Resp. at 17.) But *Abbott* does not establish a rule that provides the government impunity; it merely dictates that an individual must wait until his or her claims are ripe to pursue a legal remedy. Whether or not the Plaintiffs have suffered an injury the courts are empowered to remedy is not yet a question ripe for adjudication.

### 2. Hardship for the Beams

The Beams have identified no hardship they would suffer, were the court to delay adjudication of their claims. The only potential hardship is that the investigation of their campaign contributions would presumably continue. But "[c]ourts have almost never found that an ongoing criminal investigation imposes a sufficient hardship to the person investigated to warrant judicial review prior to his or her indictment." *North v. Walsh*, 656 F. Supp. 414, 420 (D.D.C. 1987). Indeed, "[t]he criminal justice system is structured to provide the criminal defendant ample opportunity to vindicate his rights *after* he is indicted." *Id.* at 421 (citing FED. R. CRIM. P. 12(b)). The Beams will not be forced to endure hardship simply because the dispute is deemed not ripe for adjudication. According, the issue is not ripe for judicial review.[3]

### III. Legal Relief for Alleged FECA Violations

### A. Relevant Law

The FEC previously moved to dismiss Plaintiffs' declaratory, APA, and mandamus claims pursuant to Rule 12(b)(6). (Docket Entries No. 27 & 28 at 14-19.) In open court on June 22, 2007, the FEC's and Attorney General's motion to dismiss Plaintiffs' declaratory action was granted, but

---

[3] The FEC has also moved to dismiss pursuant to Rule 12(b)(1) on the ground that sovereign immunity bars the Plaintiffs' claims against the government agents. Because that issue will not alter the outcome of the court's decision, the court declines to address it here.

the court deferred ruling on whether Plaintiffs had stated valid claims for relief under the APA or the mandamus statute. In assessing that question, a brief review of the relevant statutes is useful.

First, the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This remedy extends to "final agency action." 5 U.S.C. § 704. The reviewing court is empowered to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The reviewing court may also "hold unlawful and set aside agency action, findings, and conclusions" under certain circumstances. 5 U.S.C. § 706(2). Similarly, the mandamus statute empowers the district courts with jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This is, however, an "extraordinary remedy . . . traditionally available to compel a ministerial duty owed by the agency and then only when the statute defining that duty is clear and free from doubt." *Banks v. Sec'y of Ind. Family & Social Servs. Admin.*, 997 F.2d 231, 244 (7th Cir. 1993) (internal citation and quotation marks omitted). To invoke mandamus jurisdiction, a plaintiff must show: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available." *Id.* at 244-45; *see also Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002). For jurisdictional purposes, a plaintiff must show a "plausible" claim for relief. *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386-87 (7th Cir. 2003). Invoking both the APA and mandamus statute, Plaintiffs urge the court to require the Commission to comply with FECA.

The court reviews relevant provisions of that Act, as well. By enacting FECA, Congress established and defined the FEC. 2 U.S.C. § 437c(a)(1). Congress entrusted the Commission with exclusive jurisdiction with respect to civil enforcement of FECA. 2 U.S.C. § 437c(b)(1). In fact, the FEC's power to initiate civil actions is "the exclusive civil remedy for the enforcement of the

provisions of this Act." 2 U.S.C. § 437d(e). To aid the FEC in this task, Congress entrusted the Commission with, among others, the powers to subpoena witness testimony and document production; to order deposition testimony; to initiate, defend, and appeal civil actions to enforce FECA; to render advisory opinions; to conduct investigations and hearings; and to report apparent violations of the act to law enforcement authorities. 2 U.S.C. § 437d(a). The Commission may also seek judicial enforcement of its orders in federal district court. 2 U.S.C. § 437d(b).

In addition, FECA sets forth a procedure by which civil enforcement shall occur. There are two ways to trigger an FEC investigation. First, any person may file a written complaint with the FEC, alleging a violation of FECA. 2 U.S.C. § 437g(a)(1). Alternatively, the Commission may initiate an investigation of its own accord, based on "information ascertained in the normal course of carrying out its supervisory responsibilities." 2 U.S.C. § 437g(a)(2). In either case, the Commission must determine by an affirmative vote of four of its six voting members "that it has reason to believe that a person has committed, or is about to commit, a violation of" FECA. *Id.* If the members make this determination, the FEC "shall" notify the person of the alleged violation and "shall make an investigation of such alleged violation." *Id.* That investigation may include a field investigation or audit. *Id.* Then, if the FEC's general counsel recommends that the FEC proceed to a vote on whether there exists probable cause to believe that a violation of FECA has occurred or will occur, the general counsel "shall" notify the respondent and send the respondent a statement of the general counsel's position on the legal and factual issues of the case. 2 U.S.C. § 437g(a)(3). The respondent has fifteen days to respond to this brief. *Id.*

The FEC's next task is to determine whether there is, in fact, probable cause to believe that a violation has occurred or is about to occur. If the FEC makes such a determination, based on the investigation and the briefs, the FEC "shall" attempt to correct or prevent that violation through informal methods. 2 U.S.C. § 437g(a)(4)(A)(i). The FEC will use these informal methods–including conference, conciliation, and persuasion–to pursue a conciliation agreement. *Id.* If the parties

15

cannot reach a conciliation agreement, the FEC may file a civil enforcement suit in federal district court. 2 U.S.C. § 437g(a)(6)(A). Finally, if the FEC determines by an affirmative vote of four of its members that there is probable cause to believe that a "knowing and willful" violation of FECA has occurred or is about to occur, it "may" refer this violation to the Attorney General. 2 U.S.C. § 437g(a)(5)(C). FECA assures persons being investigated that "[a]ny notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made." 2 U.S.C. § 437g(a)(12)(A).

Here, Plaintiffs accuse the agencies of violating three FECA requirements. First, Plaintiffs argue that the FEC and the Attorney General violated, and routinely violate, the FECA provision that permits the Commission to refer violations of the Act it has probable cause to believe were knowing and willful to the Attorney General. (Am. Compl. ¶¶ 44-45.) In addition, they contend that the FEC has disregarded the investigation requirement contained in 2 U.S.C. §437g(a)(2). (*See* Am. Compl. ¶¶ 48-49.) Finally, the assert that the Commission has violated FECA's confidentiality provision by disclosing details concerning its investigative effort to the Attorney General. (Am. Compl. ¶¶ 44-45.) As a result, the Beams request that the court order the FEC to comply with these FECA requirements. In at least two cases, other district courts have considered whether alleged violations of the Act provide a basis for relief under the APA or mandamus statute. Neither of these decisions are controlling, but the court finds them persuasive and thus presents their analysis in detail below.

### B.    Related Litigation

#### 1.    Referral Provision

On February 5, 2007, Fieger, Nancy Fisher (office manager of the Fieger law firm), and the Fieger law firm brought a three-count complaint against the Attorney General and FEC Chair, based on the same investigation at issue in this litigation. Application for Writ of Mandamus and Complaint, *Fieger v. Gonzales*, Case 2:07-cv-10533 (E.D. Mich. Feb. 5, 2007). The plaintiffs in that

action sought a declaratory judgment that defendants were violating the investigation and referral provisions of FECA, *id.* ¶¶ 18-24, as well as relief under the APA and mandamus statute, *id.* ¶¶ 25-31. As here, the Attorney General and the FEC moved to dismiss. In considering their motions, Judge Zatkoff began by addressing whether the referral provision permits the Attorney General to initiate a criminal investigation absent the affirmative vote of four FEC members. In *Fieger*, the plaintiffs alleged that the Attorney General cannot investigate possible criminal violations of FECA absent a referral pursuant to § 437g(a)(5)(C), which permits the FEC to refer knowing and willful violations of the FEC to the Attorney General once it has found probable cause to believe that such a violation has occurred. *Fieger v. Gonzalez*, 07-CV-10533-DT, 2007 WL 2351006, at *2 (E.D. Mich. Aug. 15, 2007). Based on the plain language of the statute, which vests the Commission with exclusive jurisdiction over *civil* enforcement of the act, Judge Zatkoff found any arguments that the Attorney General is without authority to investigate *criminal* violations "without merit on their face." *Id.* at *5.

He noted that this reading of the statute's language comports with the Attorney General's statutory authority to conduct litigation on behalf of the government, absent a "clear and unambiguous" Congressional directive restricting it. *Fieger*, 2007 WL 2351006, at *5 (quoting *United States v. Morgan*, 222 U.S. 274, 282 (1911)). The only clear and unambiguous directive contained in FECA relates to jurisdiction over civil enforcement of the Act. *Id.* The Act makes no mention of criminal enforcement and, thus, in no way "infringes on the Attorney General's plenary power to enforce criminal violations of the Act." *Id.* Judge Zatkoff buttressed his conclusion by reviewing the Act's legislative history. One sponsor of FECA made clear that: "The bill would grant the exclusive civil enforcement of the act to the Commission to avoid confusion and overlapping with the Department of Justice, but at the same time, retain the jurisdiction of the Department of Justice for the criminal prosecution of any violations of this act." *Id.* at *6 (citation omitted). Finally, Judge Zatkoff observed "numerous courts over the last 30 years have concluded that criminal

enforcement may either originate with the Attorney General or stem from a referral by the Commission to the Attorney General." *Id.* at *7 (collecting FECA cases). Accordingly, he found no violation of the referral provision, under the very same circumstances currently before the court.

Likewise, Judge Wiley Y. Daniel of the United States District Court for the District of Colorado considered and dismissed claims brought by Barry Bialek–a medical doctor who provided consulting services to the Fieger law firm and was allegedly investigated. *Bialek v. Gonzales*, Civil Action No. 07-cv-00321-WYDPAC, 2007 WL 1879989 (D. Colo. June 28, 2007). Bialek brought a one-count declaratory action against the Attorney General and FEC Chair, alleging that both agencies had violated the Act's referral provision. Complaint, *Bialek v. Gonzales*, Civil Action No. 07-cv-00321-WYDPAC, 2007 WL 1879989 (D. Colo. Feb. 14, 2007). Granting a motion to dismiss, Judge Daniel found that the referral provision of the FEC mandates the FEC's referral process but does not limit the Attorney General "in any way." *Id.* at *3. Because "conduct of federal criminal litigation ... is an executive function within the exclusive prerogative of the Attorney General," there is a presumption against congressional intention to limit the Attorney General's power to prosecute criminal offenses. *Id.* (quoting *United States v. Int'l Union of Operating Eng'rs, Local 701*, 638 F.2d 1161, 1162 (9th Cir.1979)). Like Judge Zatkoff, Judge Daniel found in FECA no clear and unambiguous intent to restrict the Attorney General's enforcement authority. *Id.* As a result, Judge Daniel concluded "that neither the plain language of the statute nor the legislative history supports a conclusion that Congress intended to limit the Attorney General's authority to prosecute criminal violations of the Federal Election Campaign Act" and dismissed Bialek's claims. *Id.* at *5.

The court agrees with its sister courts that Plaintiffs have not pleaded a violation of FECA's referral provision. Therefore, to the extent Plaintiffs' claims for relief pursuant to the APA and mandamus statute depend on the referral provision, they are dismissed.

### 2. Investigation Requirement

The plaintiffs in the case before Judge Zatkoff also raised claims related to FECA's

investigation requirement. Specifically, the plaintiffs sought an order requiring the FEC to investigate their alleged activities. *Fieger*, 2007 WL 2351006 at *8. Judge Zatkoff found that judicial review of an agency's action is limited to "discrete" actions that are "legally required." *Fieger*, 2007 WL 2351006, at *8 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) ("the only agency action that can be compelled under the APA is action legally *required.*") (emphasis in original)). Judge Zatkoff found that the FEC has discretion regarding its investigations, and therefore that an investigation pursuant to FECA will not be the sort of "precise, definite act . . . about which [the Commission] has no discretion whatever." *Id.* at *9 (citing *Norton*, 542 U.S. at 63 (internal quotations and citations omitted)). He noted that FECA does not delineate particular acts the FEC must take when conducting an investigation or state what information the FEC must seek in its investigation and does not establish a time limit for completing any investigative action. *Id.* at *9. In fact, the Act vests the FEC with broad authority to use its investigative tools of choice, in whatever sequence and time frame it chooses. *Id.* And "the law is clear that an agency authorized to conduct investigations has broad authority to control the conduct and timing of its investigation." *Id.* (citing *Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *FEC v. Rose*, 806 F.2d 1081, 1091 (D.C. Cir.1984); *FEC v. Rose*, 806 F.2d 1081, 1091 (D.C. Cir. 1984); *Durkin for U.S. Senate Comm. v. FEC*, 2 Fed. Election Camp. Fin. Guide (CCH) ¶ 9147 at 51,113 (D.N.H.1980)). FECA specifies no "'discrete action' the FEC is 'required' to take within any particular timeframe, such that it could be subject to judicial review under the APA." *Id.* at *10 (citing *Norton*, 542 U.S. at 63).

This court concurs with Judge Zatkoff that the judiciary has no power to dictate the timing or nature of an FEC investigation. In response, Plaintiffs argue that "[t]he FEC ***is not*** conducting ***any*** investigation." (Docket Entry No. 34 at 7 (emphasis in original).) In other words, Plaintiffs suggest, even if the court may not dictate the course of an investigation, the court can and should order the FEC to conduct *some* investigation (presumably to supplant the Attorney General's

activities). The *Fieger* plaintiffs made the same argument, and Judge Zatkoff rejected it. *Fieger*, 2007 WL 2351006, at *9. Here, as in *Fieger*, the facts before the court belie the Beams' representation that the Commission has failed to initiate any investigation. As discussed above, Toner notified Beam that the FEC found, on September 19, 2006, that there is reason to believe Beam violated FECA. (Letter from M. Toner to J. Beam of 9/26/06.) Toner also purported to attach a Factual and Legal Analysis, to more fully explain the FEC's finding. (*Id.*) He invited Mr. Beam to submit any relevant factual or legal materials within fifteen days of receiving his letter, and warned that a finding of probable cause might be entered against Mr. Beam if he failed to do so. (*Id.*) Twice, the letter refers to an investigation. (*Id.*) As this court reads his letter, Toner made clear that an investigation was in fact underway.

Judge Zatkoff also focused on Congressional intent to deprive federal courts of jurisdiction to review the FEC's handling of administrative complaints. *Fieger*, 2007 WL 2351006, at *10. As explained above, the FEC has exclusive jurisdiction over civil enforcement of the Act. In fact, the Act entrusts the FEC with the exclusive power to investigate alleged violations of the Act and sets forth a specific process the FEC must follow when doing so. This "provides a strong basis for scrupulously respecting the grant by Congress of 'exclusive jurisdiction' to the FEC." *Stockman v. FEC*, 138 F.3d 144, 152 (5th Cir. 1998). Indeed, "Congress could not have spoken more plainly in limiting the jurisdiction of federal courts to adjudicate claims under [the Campaign Act.]" *Id.* at 153 (quoting *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996)). Neither of the two enumerated exceptions–courts may enforce FEC subpoenas, at the request of the FEC, and an administrative complainant may bring civil actions against the FEC in the United States Court for the District of Columbia if the FEC dismissed his or her complaint or fails to act on it within 120 days–was applicable either in the case before Judge Zatkoff, nor is either exception applicable here. *Fieger*, 2007 WL 2351006, at *10 (citing, *inter alia*, 2 U.S.C. § 437d(b) & 2 U.S.C. § 437g(a)(8)). In other words, courts are not empowered to award the relief Plaintiffs seek.

Moreover, the only FECA provision empowering private parties to seek judicial review extends to administrative *complainants.* "As the Act specifically provides that 'administrative complainants' are authorized to petition for judicial review of the Commission's alleged failure to act in an enforcement investigation, the Court must assume Congress intended to deny anyone other than an administrative complainant (including administrative *respondents*, such as Plaintiffs) the right to petition for judicial review." *Fieger*, 2007 WL 2351006, at *10. Even if such a suit were proper, FECA would require that it be brought in the United States District Court for the District of Columbia. *Id.* (citing 2 U.S.C. § 437g(a)(8)(A)). This, Judge Zatkoff noted, plainly precludes a private litigant from maintaining a cause of action in other district courts. *Id.*

This court agrees that there is no discrete, non-discretionary action to compel in this case. Consequently, the court dismisses Plaintiffs' claims, insofar as they allege a violation of the Act's investigation requirement.

### 3. Confidentiality Provision

This case also implicates FECA's confidentiality provision, a matter not considered by either Judge Zatkoff or Judge Daniel. Although the Beams themselves made public that they are under investigation, they contend that the FEC violated the confidentiality provision by sharing information about the investigation with the Attorney General. The Act's confidentiality provision, taken together with the overall scheme of FECA, "create a strong confidentiality interest analogous to that protected by Federal Rule of Criminal Procedure 6(e)(6). In both contexts, secrecy is vital to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *In re Sealed Case 00-5116*, 237 F.3d 657, 667 (D.C. Cir. 2001) (internal quotation marks and citations omitted). Rule 6(e)(2), in turn, is intended "to protect both persons who may be unjustly suspected of crime and the safety of those who provide information. . . ." *In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992). But Rule 6(e) explicitly provides for inter-agency sharing of information, by permitting a government attorney to disclose grand-jury matters involving foreign

intelligence, counter-intelligence, or foreign intelligence information to federal law enforcement, intelligence, protective, immigration, national defense, or national security officials under certain circumstances.  FED. R. CRIM. P. 6(e)(3)(D).  Based on this, it is unclear that sharing information with another government agency would violate FECA's confidentiality provision, as it may not rise to the level of making the investigation or findings "public."  The FEC has urged as much but, without subject matter jurisdiction to adjudicate this issue, the court leaves that question for another day.

## CONCLUSION

Plaintiffs' Motion for Declaratory Judgment and Writ of Mandamus (9) is hereby denied.  The Attorney General's Motion to Dismiss (50) and the FEC's Motion to Dismiss (53) are granted.  Plaintiffs have leave, if they can cure the deficiencies identified here, to file a Second Amended Complaint on or before March 28, 2008.

ENTER:

Dated: March 7, 2008

REBECCA R. PALLMEYER
United States District Judge