**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JACK and RENEE BEAM,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 1227 |
| | ) | |
| **MICHAEL B. MUKASEY, UNITED STATES** | ) | Judge Rebecca R. Pallmeyer |
| **ATTORNEY GENERAL,** in his official capacity; | ) | |
| **FEDERAL ELECTION COMMISSION CHAIRMAN** | ) | |
| **DAVID M. MASON,** in his official capacity; | ) | |
| **UNKNOWN AGENTS OF THE FEDERAL** | ) | |
| **BUREAU OF INVESTIGATION,** in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jack and Renee Beam (the "Beams"), Illinois residents, claim that the government targeted them for an investigation in November 2005 because of their support for presidential candidate John Edwards in the 2004 election. Plaintiffs allege that the United States Attorney General ordered a raid of the Michigan law office with which Mr. Beam was affiliated, as well as raids of the homes of some of the law firm's employees and associates. Plaintiffs further claim that agents of the Justice Department and/or the FBI seized financial records of the firm's employees and associates, including the Plaintiffs. The Beams have brought a three-count complaint against the Attorney General, the Chair of the Federal Election Commission (the "FEC") and certain unknown agents of the Federal Bureau of Investigation (the "FBI") (collectively, the "Defendants"), charging them with violating certain federal statutes as well as the United States Constitution. Defendants have moved to dismiss the complaint. For the reasons given below, the motions are granted in part and denied in part.

## FACTUAL BACKGROUND

For purposes of deciding a motion to dismiss, the allegations of Plaintiffs' Second Amended Complaint are accepted as true and viewed in the light most favorable to Plaintiffs. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Plaintiffs allege that in February 2003, the Beams contributed to the 2004 presidential campaign of John Edwards, a Democrat. (2d Am. Compl. ¶ 7.) A number of employees and associates of the Michigan law firm of Fieger, Fieger, Kenney & Johnson (the "Fieger law firm"), where Mr. Beam is of counsel, also made contributions to Edwards during the 2004 election cycle. (*Id.* ¶¶ 7, 10.)

On November 30, 2005, then-Attorney General Alberto Gonzales authorized a nighttime raid on the Fieger law firm's offices. (*Id.* ¶ 8.) That same evening, approximately 100 federal agents also raided the homes of certain associates and employees of the Fieger law firm. (*Id.* ¶ 9.) The Beams allege that during these raids, federal agents "harassed" the Fieger law firm employees, asking them who they voted for in the 2004 presidential election and questioning them about their contributions to the Edwards campaign. (*Id.* ¶ 11.) During these raids, federal agents also allegedly informed the Fieger employees that the agents had previously obtained the employees' financial records. (*Id.*) Plaintiffs have not alleged that their own residence was raided. They do assert, however, that at some point after the raids (Plaintiffs do not say when), the Beams learned that federal agents of the Justice Department and/or the FBI had obtained their financial records. (*Id.* ¶¶ 13, 16.) The Beams further allege that their financial records were later (again, on an unidentified date) transmitted to the FEC. (*Id.* ¶ 18.)

On March 2, 2007, Plaintiffs initiated this action by filing an Application for Writ of Mandamus and Complaint in this court, naming Attorney General Alberto Gonzales and FEC Chair Robert Lenhard as Defendants. (Docket Entry No. 1.) Pursuant to motions by both Defendants, on June 22, 2007, the court dismissed Count I of the Complaint–seeking a declaratory judgment that the Attorney General and the FEC had violated the Federal Campaign Finance Act–for failing

2

to allege sufficient facts that would support a right to relief. (Docket Entry No. 46.) The court reserved ruling on the other two counts of the complaint, in which Plaintiffs had alleged violations of the Administrative Procedure Act ("APA") and had sought a writ of mandamus requiring that the FEC comply with the Federal Campaign Finance Act.

A week later, on June 29, 2007, Plaintiffs filed a five-count Amended Complaint naming Gonzales, Lenhard, and certain unnamed FBI agents as Defendants, all in their official and individual capacities. (1st Am. Compl., Docket Entry No. 47.) Plaintiffs alleged violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.*; the Federal Election Campaign Act ("FECA"), 2 U.S.C. § 431 *et seq.*; and the APA, 5 U.S.C. § 701 *et seq.* (*Id.*) Plaintiffs also alleged that they were retaliated against for engaging in constitutionally protected activity, and sought a writ of mandamus compelling the FEC to comply with federal law. (*Id.*) The FEC and the Attorney General again moved to dismiss.

On March 7, 2008, this court granted their motions. *Beam v. Gonzales*, 548 F. Supp. 2d 596 (N.D. Ill. 2008). In so ruling, the court held that the Plaintiffs lacked standing to bring their claims because the Amended Complaint did not allege any injury-in-fact. *Id.* at 603. The court also held that Plaintiffs' claims were not ripe for judicial review at that time because a federal criminal investigation into the conduct of the Fieger law firm's employees was ongoing and the Attorney General and FEC had "not yet made decisions about whether or how to enforce applicable laws." *Id.* at 605-06. Finally, the court dismissed Plaintiffs' APA and mandamus claims, concluding that they failed to allege a violation of FECA because the statute does not clearly limit the Attorney General's enforcement authority and because the statute does not authorize courts to "dictate the timing and nature of an FEC investigation." *Id.* at 609-12. The court again permitted Plaintiffs to file a second amended complaint. *Id.* at 612.

Plaintiffs did so on March 28, 2008. In their three-count Second Amended Complaint, Plaintiffs renewed the RFPA (Count I) and retaliation (Count II) claims they alleged in their First

3

Amended Complaint, and raised for the first time a claim for selective and vindictive prosecution (Count III). (2d Am. Compl.) David Mason, who replaced Lenhard as FEC Chair, and Michael Mukasey, who replaced Gonzales as Attorney General, are sued in their official capacities; certain unknown agents of the FBI are sued in both their official and individual capacities. (*Id.*) The FEC and the Attorney General both moved to dismiss Plaintiffs' Second Amended Complaint.

While Defendants' motions have been pending in this court, on June 2, 2008, a federal jury in Detroit, Michigan acquitted Geoffrey Fieger and Ven Johnson, two partners at the Fieger law firm, of criminal violations of FECA. *See* David Ashenfelter & Joe Swickard, *Thank You, Jurors, Cleared Fieger Says*, DETROIT FREE PRESS, June 3, 2008, at 3. Fieger and Johnson had been charged with illegally reimbursing employees and associates of the Fieger law firm for more than $100,000 in campaign contributions made to the 2004 Edwards campaign. *Id.*

## **DISCUSSION**

In their motions to dismiss, Defendants argue, first, that the court lacks subject matter jurisdiction over Plaintiffs' claims. FED. R. CIV. P. 12(b)(1). According to Defendants, some of Plaintiffs' claims are barred by sovereign immunity;[1] Plaintiffs lack standing to pursue at least some of the claims;[2] and none of the claims are ripe for judicial review. Additionally, Defendants argue that the complaint should be dismissed pursuant to Rule 12(b)(6), for failing to state a claim on which relief can be granted.

---

[1] The FEC claims that sovereign immunity prevents the court from exercising subject matter jurisdiction over both Counts II and III (FEC Mem. [95] at 8-9), while the Attorney General appears to raise sovereign immunity as a defense only to Count II. (A.G. Mem. [96] at 11 n.5.)

[2] The FEC argues that Plaintiffs lack standing to bring Counts I and II (FEC Mem. at 4-8); the Attorney General argues that Plaintiffs lack standing to bring any of the three counts. (A.G. Mem. at 7-8.)

**I.     Standard of Review**

To withstand a motion to dismiss pursuant to Rule 12(b), a plaintiff must plead facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, --- U.S. ---, ---, 127 S. Ct. 1955, 1965 (2007); *see also Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). The factual allegations, however, need not be detailed, *Twombly*, 127 S. Ct. at 1964-65, and the court accepts the well-pleaded allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Vill. of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 782 (7th Cir. 2008). The 12(b)(6) test thus remains a generous one. In contrast, where Defendants challenge the court's subject matter jurisdiction, the court will presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1001 (7th Cir. 2004) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)). In responding to Defendants' arguments concerning ripeness, sovereign immunity, and standing, then, it is the Plaintiffs' "responsibility to clearly allege facts that invoke federal court jurisdiction." *Sprint Spectrum*, 361 F.3d at 1001; *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." (citation omitted)).

Before applying these standards to the Second Amended Complaint, the court pauses to note the parties' apparent agreement that materials not included in the complaint, but attached to Plaintiffs' response memorandum, are properly before the court. In deciding a motion to dismiss, courts are generally limited to considering only the well-pleaded allegations of the complaint. *See* FED. R. CIV. P. 12(d); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). In their Second Amended Complaint, Plaintiffs have alleged that they have "obtained documentary proof that federal agents . . . obtained their financial records by engaging in acts and/or omissions that violate the [RFPA]" (2d Am. Compl. ¶ 16), but do not specifically identify the nature of the documentary proof. The Attorney General, in his memorandum in support of his motion to dismiss,

acknowledges that federal agents obtained Plaintiffs' financial records, but pount out that they did so by means of a grand jury subpoena. (A.G. Mem. at 3.) Plaintiffs apparently concede this: they have attached to their response memorandum a a copy of the grand jury subpoena, requesting records of their account from December 2002 through April 2003. (Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mots. to Dismiss (hereinafter "Pl.'s Resp.").)

Despite the general reluctance of courts to consider matters outside of the pleadings in deciding a motion to dismiss pursuant to Rule 12(b), courts will nevertheless consider documents attached to a motion to dismiss if the document is referred to in the complaint itself. *Rosenblum*, 299 F.3d at 661. Although the grand jury subpoena at issue in this case is not attached to the motion to dismiss, it is attached to Plaintiffs' memorandum in response, and is referred to (albeit indirectly) in the Second Amended Complaint itself. The general principle is thus the same: Plaintiffs' complaint refers to "documentary proof" that the government obtained the Beams' financial records, and both the Defendants and the Plaintiffs appear to agree that the proof consists of the grand jury subpoena. *See Adamczyk v. Lever Bros. Co.*, 991 F. Supp. 931, 933 (N.D. Ill. 1997) ("a party may assert additional facts in response to a motion to dismiss" as long as the facts "are consistent with the allegations of the complaint" (citing *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996)) The court presumes it is this subpoena that constitutes the "documentary proof" to which Plaintiffs have referred obliquely in their complaint.[3]

**I.     Ripeness**

---

[3]     Plaintiffs also attached a grand jury subpoena to their response memorandum that requests records of the Fieger law firm from the firm's bank. (Ex. A to Pl.'s Resp.) The court is not persuaded that this subpoena has any relevance to Plaintiffs' claims for relief in their Second Amended Complaint, as it does not concern any RFPA violation relating to the Beams' own financial records; does not show retaliation against the Beams; and was not used in a selective or vindictive prosecution against the Beams. Nor is this Fieger law firm subpoena obviously referenced in the complaint. The court thus declines to consider this attachment to Plaintiffs' response memorandum.

At the outset, the court addresses an objection voiced by both Defendants to the court's exercise of subject matter jurisdiction over the issues raised in Plaintiffs' Second Amended Complaint: whether the case is ripe for judicial consideration. The court dismissed Plaintiffs' First Amended Complaint partially on the ground that the issues presented were not ripe. "The question of ripeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Defendants contend that nothing has changed between that complaint and the present complaint, and that Plaintiffs' claims are still unripe for review. The court disagrees.

In dismissing Plaintiffs' First Amended Complaint, the court held that the issues presented in the complaint were not fit for judicial decision. The principal reason for the finding of unfitness was the court's reluctance "to intervene in an ongoing federal criminal investigation" and thereby interfere with the investigation. *Beam*, 548 F. Supp. 2d at 606. Specifically, the court noted that it did not yet know "what, if any, charges may be brought against the Beams." *Id.* That is no longer the case. The grand jury subpoena issued to the Beams' bank requested documents from December 2002 through April 2003. (Ex. B to Pl.'s Resp. at 5.) Defendants do not dispute that FECA's five-year statute of limitations for criminal sanctions has run. *See* 2 U.S.C. § 455(a) ("No person shall be prosecuted, tried, or punished for any [FECA] violation . . . unless the indictment is found or the information is instituted within 5 years after the date of the violation.") The FEC nevertheless maintains that Plaintiffs "may still face potential *civil* liability for violations of [FECA]." (FEC Reply [101] at 5.) Although FECA does not contain a statute of limitations for civil liability, courts that have considered the question have found that the five-year default statute of limitations provided by 28 U.S.C. § 2462 applies.[4] *See, e.g.*, *FEC v. Williams*, 104 F.3d 237, 239 (9th Cir.

---

[4] Section 2462 provides:

(continued...)

1996); *FEC v. Christian Coalition*, 965 F. Supp. 66, 69 (D.D.C. 1997) ("FECA does not contain an internal statute of limitations. The applicable statute of limitations is provided under 28 U.S.C. § 2462—a point the parties do not, nor could they, reasonably dispute."). Accordingly, the court concludes civil penalties against the Beams for the conduct at issue in the government's investigation of their financial records would also be barred by the statute of limitations.

The FEC does not explain how Plaintiffs could still be subjected to civil liability, given the five-year statute of limitations under 28 U.S.C. § 2462.[5] Perhaps the FEC believes that despite the statute of limitations, it could still seek equitable remedies against the Beams. *See Christian Coalition*, 965 F. Supp. at 72 ("[A] suit in equity may lie though a comparable cause of action at law would be barred." (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946))). Even assuming that the Beams' conduct would somehow support a claim against them for equitable relief, this court is unwilling to conclude that such a possibility requires dismissal of this action. Arguably no statute of limitations applies to equitable actions under FECA at all; thus, under the FEC's theory, the FEC's mere assertion that "investigations into the plaintiffs' activities are not complete" (FEC Mem. at 10) and that an equitable claim is under consideration could result in delaying this case as unripe indefinitely. It appears to the court that no outstanding actions yet to be taken by the FEC or other events could seriously affect the claims advanced by Plaintiffs in this complaint. *See Lucien v.*

---

[4](...continued)
Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.
28 U.S.C. § 2462.

[5] The Attorney General does not address the issue of civil penalties at all. He nevertheless argues that the issues presented by the case are not ripe because the Beams were not indicted. (A.G. Reply Mem. [102] at 2-3.) The Attorney General appears to concede, however, that this argument is essentially the same as the argument that Plaintiffs lack standing because they have suffered no injury. (*Id.* at 3 ("This argument, however, merely points out Plaintiffs' lack of injury."))

8

*Jockisch*, 133 F.3d 464, 469 (7th Cir. 1998) ("Concern with the contingency of future events is at the core of the ripeness doctrine." (quoting *Alcan Alum. Ltd. v. Dept. of Rev.*, 724 F.2d 1294, 1295 n.1 (7th Cir. 1984))). The remote possibility of a future equitable action cannot preclude a finding by the court that the issues presented by Plaintiffs in their Second Amended Complaint are fit for judicial decision.

The second question in the court's ripeness inquiry is whether Plaintiffs would suffer any hardship if they were delayed in proceeding in this case. The court previously found that the Beams could identify no hardship that they would suffer if the criminal investigation into their activities were to continue. *Beam*, 548 F. Supp. at 607. Now, however, the FEC appears to have run out of time to bring either a criminal or civil enforcement action against the Beams. There is thus no benefit to any of the involved parties in delaying consideration of Plaintiffs' claims on the grounds that they are unripe. "The hardship prong under the ripeness doctrine is largely irrelevant in cases, such as this one, in which neither the agency nor the court have a significant interest in postponing review." *Elec. Power Supply Ass'n v. F.E.R.C.*, 391 F.3d 1255, 1263 (9th Cir. 2004). Defendants' arguments that Plaintiffs would suffer no hardship from continuing to delay hearing their claims fail for two reasons. First, Defendants do not acknowledge that the applicable statutes of limitations under FECA have lapsed and that no strong reasons remain for delaying consideration of their claims. Second, the "lack of hardship" arguments advanced by Defendants become, at a certain point, indistinguishable from their substantive arguments that Plaintiffs have not suffered any cognizable injury. This inquiry is better resolved by determining whether the law recognizes the injuries alleged by Plaintiffs, rather than having the court refuse to hear the claims on the grounds that the issues are not ripe for review. As the statutes of limitations have expired for both criminal and civil penalties arising out of the Beams' activities in late 2002 and early 2003, the court concludes that the claims presented in the Beams' Second Amended Complaint are now ripe for judicial decision.

## II. Plaintiffs' Complaint

### A. Right to Financial Privacy Act Claims

Defendants argue that Plaintiffs lack standing to bring the RFPA claims. As noted above, the party invoking federal jurisdiction–here, the Beams–bears the burden of establishing standing. *Freedom From Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008). To demonstrate standing, a party must show "(1) injury-in-fact, (2) causation, and (3) redressability." *Citizens Against Ruining the Environment v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In the prior decision dismissing Plaintiffs' First Amended Complaint, the court found that the Beams had failed to establish that they had suffered an injury-in-fact. *Beam*, 548 F. Supp. 2d at 603.

"At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice" to prove injury-in-fact. *Disability Rights Wis., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008) (quoting *Lujan*, 504 U.S. at 561). In their First Amended Complaint, Plaintiffs alleged that federal agents raided "the homes of the associates and employees of the Fieger law firm," but did not allege that their own home was raided or that the government actually seized their financial records. (1st Am. Compl. ¶ 9.) In the Second Amended Complaint, by contrast, Plaintiffs allege that federal agents "had, in fact, obtained [the Beams'] financial records by engaging in acts and/or omissions that violate the Right to Financial Privacy Act," and that these "illegally gathered documents" were transmitted to the FEC. (2d Am. Compl. ¶¶ 16, 18.) The question, thus, is whether these allegations suffice to demonstrate injury-in-fact caused by any of the named Defendants.

The Attorney General argues that Plaintiffs' allegations that the government accessed their financial records are not sufficient to establish an injury-in-fact because the supposed injury is not a "legally-protected interest." *See Plotkin v. Ryan*, 239 F.3d 882, 885-86 (7th Cir. 2001). Satisfying the injury requirement for standing requires a showing that the plaintiff has "suffered an invasion

of a legally-protected interest" that is real and not hypothetical. *Id.* (quoting *Lujan*, 504 U.S. at 560). The court agrees with the Attorney General that Plaintiffs have alleged no violation of a legally-protected interest, and hence no injury-in-fact, arising from the government's investigation of Geoffrey Fieger, a partner at the Fieger law firm. Plaintiffs' allegations in their Second Amended Complaint go beyond this, however, as they claim that federal agents obtained their own financial records in violation of the RFPA. (2d Am. Compl. ¶ 16.) "It is well settled that a statute itself may create a legal right, the invasion of which causes an injury sufficient to create standing." *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1166 (D. Kan. 2008) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). The RFPA creates for private citizens a right to sue and recover actual or statutory damages for violations; the statute thus by its own terms creates a legally-protected interest. *See* 12 U.S.C. § 3417(a). In other words, Plaintiffs have standing if they have alleged facts sufficient to support a reasonable inference that the statute was violated. The injury-in-fact inquiry, then, blends into an inquiry into the merits of Plaintiff's allegations, as the Plaintiffs have alleged a violation of a legally-protected interest only if they have alleged a violation of the RFPA. Defendants' 12(b)(1) motions to dismiss for lack of subject matter jurisdiction is thus analyzed along with the 12(b)(6) motions to dismiss for failure to state a claim. *See Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." (citing *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986))).

Plaintiffs' conclusory statement that federal agents violated the RFPA does not by itself satisfy the pleading standards, even under the generous standards applied to a motion to dismiss under Rule 12(b). *See Twombly*, 127 S. Ct. at 1966. Instead, the court looks at the facts supporting this conclusory assertion–namely, the grand jury subpoena–to determine whether the issuance of the subpoena supports a finding that the government violated the RFPA. Defendants

11

insist that obtaining the information by means of a grand jury subpoena does not violate the RFPA.

Section 3413(i) reads:

> Nothing in this title (except sections 1115 and 1120 [12 USCS §§ 3415 and 3420]) shall apply to any subpoena or court order issued in connection with proceedings before a grand jury, except that a court shall have authority to order a financial institution, on which a grand jury subpoena for customer records has been served, not to notify the customer of the existence of the subpoena or information that has been furnished to the grand jury, under the circumstances and for the period specified and pursuant to the procedures established in . . . 12 U.S.C. § 3409.

12 U.S.C. § 3413(i). The Beams argue that the second exception clause ("except that a court shall . . .") requires the government to "follow the statutory procedures outlined in § 3409 to seal the *existence* of a grand jury subpoena served on a financial institution" (Pl.'s Resp. at 4), a procedure which was admittedly not followed here.[6]

Plaintiffs' reading of the statute is defeated by the plain language of the Act. The RFPA strikes a balance between customers' right to financial privacy and law enforcement's legitimate need for private financial records. *See In re Grand Jury Subpoena*, 41 F. Supp. 2d 1026, 1032 (D. Alaska 1999). In particular, grand jury subpoenas were exempted from the reporting requirements of the statute. The clause on which Plaintiffs rely grants courts the authority to order a financial institution to withhold customer notification pursuant to the RFPA despite the existence of a grand jury subpoena, but does not, as Plaintiffs suggest, *require* the government to go through this procedure. All that the second exception clause does is permit courts to institute "gag orders" pursuant to § 3409 when the disclosure is pursuant to a grand jury subpoena–a provision that might be characterized as an excess of caution, as the introductory language to the section states that

---

[6] The subpoena states, in pertinent part:
The government requests that your institution not provide any infor-mation [sic] about this grand jury subpoena to any third party–including the affected accountholder(s)–for a period of 90 days. Federal law permits but does not require you to comply with this request for nondisclosure. See 12 U.S.C. § 3413(i). However, any disclosure to third parties could impede the investigation being conducted and thereby interfere with the enforcement of federal criminal law.
Ex. B to Pl.'s Resp. at 2.

the RFPA does not apply to such subpoenas at all. Plaintiffs cite no authority to support their reading of the statute, and the court is aware of none. *See Pleasant v. Lovell*, 876 F.2d 787, 806 (10th Cir. 1989) ("Under the Act, there is no requirement that a bank notify its customer of a grand jury subpoena."); *In re Grand Jury Subpoena*, 41 F. Supp. 2d at 1032 ("[F]ederal grand jury subpoenas were specifically exempted from the provisions of the RFPA requiring notice to customers."). Indeed, Plaintiffs made this same argument in the Michigan district court that supervised the Feiger grand jury investigation, and the court rejected it. (*See* Trans. of Aug. 15, 2007, Ex. A to Def. Attorney General's Reply Mem. in Supp. of His Mot. to Dismiss [66] at 59.) Therefore, the government did not violate the RFPA by obtaining the Beams' financial records pursuant to a grand jury subpoena, which means the Plaintiffs have suffered no injury to a legally-protected interest as a result of the Attorney General's conduct and have failed to state a claim upon which relief can be granted.[7]

The Plaintiffs' claim against the FEC stands on a different footing, however. Section 3417 of the RFPA prohibits "any agency or department of the United States . . . [from] obtaining financial records or information contained therein in violation of [the RFPA]." Another section of the Act, § 3412, provides that financial records "originally obtained pursuant to this title shall not be transferred to another agency or department unless the transferring agency or department" provides a written certification that the records are needed for legitimate law enforcement needs.[8] 12 U.S.C.

---

[7] Additionally, Plaintiffs cannot successfully assert this claim against the unknown FBI agents named by Plaintiffs in their Second Amended Complaint because § 3417(a), by its own terms, authorizes suits only against federal agencies and departments and financial institutions, not individuals. 12 U.S.C. § 3417(a); *see also Liffiton v. Keuker*, 850 F.2d 73, 78-79 (2d Cir. 1988).

[8] Plaintiffs have not specifically alleged a violation of § 3412 by identifying the specific provision, but their argument clearly focuses on this provision. The complaint alleges that the Attorney General and his agents transmitted the financial records to the FEC in violation of the RFPA (2d Am. Compl. ¶¶ 18-20), and they advance the same argument in their memorandum in opposition. (Pl.'s Resp. at 8.) The failure to specifically identify the precise statute is irrelevant in deciding a motion to dismiss, as the Plaintiff has only the burden of establishing a general right to
(continued...)

§ 3412(a). An agency that obtained financial records from another department or agency could thus be liable under § 3417, even if the original agency obtained the documents legally. Thus, although Plaintiffs' allegations that the Attorney General obtained their financial records illegally fails, the FEC could still be liable for obtaining the documents in violation of the RFPA if they obtained the records from the Department of Justice without following the procedures outlined in § 3412. Reading these two sections together, then, Plaintiff has adequately alleged the FEC has obtained these documents in violation of the RFPA.

The FEC claims that this court's prior opinion, which dismissed the Plaintiffs' RFPA claim in the First Amended Complaint against the FEC as "unsubstantiated speculation," *Beam*, 548 F. Supp. 2d at 604, defeats this new complaint as well. Again, the court disagrees. In the Second Amended Complaint, unlike the First Amended Complaint, Plaintiffs specifically allege that the FEC received these documents. (2d Am. Compl. ¶ 18.) While it is true that Plaintiffs still do not have actual physical proof that the FEC obtained these documents in violation of the RFPA, the Plaintiffs are not required to possess definitive proof at this stage. *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 628 (7th Cir. 2003) ("The right question is whether it is possible to imagine proof of the critical facts consistent with the allegations actually in the complaint."). The FEC places undue emphasis on the "unsubstantiated speculation" language of the court's prior opinion; the First Amended Complaint at issue in that case did not clearly allege that the FEC in particular (as opposed to the "government" as one singular entity) had done anything wrong, so the Plaintiffs were essentially requiring the court to speculate not just as to facts but as to what the complaint alleged. By contrast, Plaintiffs' Second Amended Complaint pleads what the First Amended

---

[8](...continued)
relief rather than setting forth the precise legal theory under which he is proceeding. *See Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996) ("The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories."). Plaintiffs' general invocation of the RFPA, which includes § 3412, is therefore sufficient.

Complaint did not. Although not all the facts alleged by Plaintiff are proven prior to discovery, the court accepts as true well-*pleaded* allegations of the complaint for purposes of a motion to dismiss. *Tamayo*, 526 F.3d at 1081. If Plaintiffs still lack any evidence that an RFPA violation occurred after they have had the chance to engage in discovery, summary judgment in favor of the FEC may well be appropriate. But at this preliminary stage, Plaintiffs have adequately pleaded a cause of action under the RFPA against the FEC, and so the court denies the FEC's 12(b)(1) and 12(b)(6) motions as to this claim.

### B. Retaliation

Defendants argue that Plaintiffs' second count, for "retaliation and deprivation of First Amendment rights to free speech," is both barred by sovereign immunity and fails to state a claim. The Second Amended Complaint alleges that the investigation of the Beams' private financial records "was carried out to instill fear and retaliation for Plaintiffs' exercise of their political activities and support for Democratic candidates and without serving any legitimate law enforcement purpose." (2d Am. Compl. ¶ 24.) The Beams have named Mukasey and Mason as defendants in their "official capacities" only, however, and sovereign immunity bars "suits brought against the United States and its officers acting in their official capacity." *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000). To proceed with this action, then, Plaintiffs must identify "federal law that waives the sovereign immunity of the United States to the cause of action." *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003). In their memorandum in opposition to the motions to dismiss, the Beams argue that this count is authorized as a *Bivens*-type action, which allows plaintiffs to recover money damages for certain violations of constitutional rights. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). That theory is inapplicable here, however, because "[a] *Bivens* action may not be maintained against [] federal employees in their official capacities." *Neville v. True*, 900 F. Supp. 972, 978 (N.D. Ill. 1995) (citing *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988)). The

doctrine of sovereign immunity thus prevents this claim from being pursued against either Defendant Mukasey or Defendant Mason in their official capacities.

In any event, Count II fails to state a claim upon which relief can be granted and must be dismissed under Rule 12(b)(6), even with respect to the unknown FBI agents. At the outset, the court notes that Plaintiffs cite no case law supporting the notion that being subject to a retaliatory investigation lends itself to a *Bivens* action. *See Hartman v. Moore*, 547 U.S. 250, 262 n.9 (2006) ("No one here claims that simply conducting a retaliatory investigation with a view to promote a prosecution is a constitutional tort."). Even assuming that such a cause of action exists, however, Plaintiffs have failed to adequately plead the elements of a retaliation claim. The elements of a First Amendment retaliation claim are that (1) a plaintiff engaged in constitutionally protected speech, (2) the plaintiff "suffered a deprivation likely to deter free speech," and (3) his speech was a motivating factor in the decision to retaliate. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). While making campaign contributions and vocally supporting a presidential candidate undoubtedly constitute protected speech, *see Buckley v. Valeo*, 424 U.S. 1, 15 (1976), the Beams have failed to adequately allege the second element, namely, how the deprivation that they suffered—being subjected to a political investigation–was likely to deter their speech.[9] The Plaintiffs concede—and, indeed, they rest their entire RFPA claim upon the notion–that Defendants sought to actively conceal from them that they were investigating their financial records. But a party trying to "instill fear and retaliation" (2d Am. Compl. ¶ 24) would not want its actions concealed from the party whose speech it is trying to deter; rather, the party trying to deter speech would want its actions well known. Indeed, the whole concept of deterrence rests upon the notion that the public

---

[9] Defendants also argue that Plaintiffs lack standing to pursue this claim because Plaintiffs have not suffered any injury-in-fact as a result of the alleged retaliation. As with the RFPA claim, this argument is indistinguishable from whether Plaintiffs have stated a claim upon which relief can be granted, because there is no injury if the second element of the cause of action is not met. The court therefore evaluates the sufficiency of the Beams' claim for relief. *See Peckmann*, 966 F.2d at 297.

16

penalty for the protected speech will dissuade similar speech or activity by others. Count II thus fails to state a claim upon which relief can be granted.

      **C.**      **Selective and Vindictive Prosecution**

Plaintiffs' Second Amended Complaint alleges, for the first time, a deprivation of the Beams' right to be free from selective and vindictive prosecution. The Fifth Amendment protects the right of citizens to not be singled out for prosecution for improper purposes. *See Wayte v. United States*, 470 U.S. 598, 608 (1985) ("[A]lthough prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints." (internal quotations omitted) (citing *United States v. Batchelder*, 442 U.S. 114, 125 (1979))). Likewise, the Constitution prohibits vindictive prosecutions "undertaken in retaliation for the exercise of a legally protected statutory or constitutional right." *United States v. Cyprian*, 23 F.3d 1189, 1196 (7th Cir. 1994) (citing *United States v. Dickerson*, 975 F.2d 1245, 1250-51 (7th Cir. 1992)).

An essential element of a selective or vindictive prosecution claim is that a prosecution must take place. A "prosecution" is "a criminal action; a proceeding instituted and carried on . . . for the purpose of determining the guilt or innocence of a person charged with crime." BLACK'S LAW DICTIONARY 1221 (6th ed. 1991). Plaintiffs concede not only that no criminal action has been brought against them, but that no such action can be brought because the five-year statute of limitations for criminal actions under FECA has expired. (Pl.'s Resp. at 13.) The Beams have thus not been prosecuted, and, *a fortiori*, could not have been selectively or vindictively prosecuted. Plaintiffs' contention that dismissal of this claim means that "the government can harass, threaten, intimidate, retaliate, and conspire against American citizens" so long as they are ultimately not indicted is clearly incorrect. (*Id.* at 12.) The court's holding that these facts do not support claims for selective and vindictive prosecution does not preclude the possibility that other relief may be

17

available. Plaintiffs' selective and vindictive prosecution count is therefore dismissed for the simple reason that they have not been prosecuted.[10]

## **CONCLUSION**

For the foregoing reasons, Defendant Mukasey's Motion to Dismiss [96] is granted. Defendant Mason's Motion to Dismiss [95] is denied as to Count I and granted in all other respects.

ENTER:

Dated: October 15 , 2008

_____
REBECCA R. PALLMEYER
United States District Judge

---

[10] The court has no need to consider Defendants' arguments that Plaintiffs also lacked standing and were barred by sovereign immunity from bringing this count.