# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACK BEAM and RENEE BEAM, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 07 C 1227 |
| ) | |
| MATTHEW S. PETERSEN, FEDERAL ) | Judge Rebecca R. Pallmeyer |
| ELECTION COMMISSION CHAIRMAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In this lawsuit, Plaintiffs Jack and Renee Beam ("Plaintiffs") claimed that Defendant, the Federal Election Commission ("FEC," "Commission," or "Defendant"), improperly obtained their private financial records from the Department of Justice ("DOJ") without following certain requirements outlined in the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3401 *et seq.* The court denied FEC's motion for summary judgment but, after a two-day bench trial, concluded that Plaintiffs had not proven any violation. *See Beam v. Peterson*, No. 07 C 1227, 2010 WL 3894225 (N.D. Ill. Sept. 30, 2010). Defendant now seeks an award of costs in the amount of $8,300.64, including court reporter and transcript fees, witness fees, and certain other charges. (Bill of Costs at 1.) Plaintiffs object to any award, arguing that Defendant's request is barred by "unclean hands"—that is, that Defendant has engaged in what the Seventh Circuit generally refers to as "misconduct." (Pl.'s Objections to Def.'s Bill of Costs (hereinafter "Pl.'s Objs."), at 2.) Alternatively, Plaintiffs object to particular portions of Defendant's bill of costs. (Pl.'s Objs. at 4-8.) For the reasons explained below, these objections are overruled, and the court awards costs in the amount requested.

## LEGAL STANDARDS

Rule 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . " *Cefalu v. Vill. of Elk Grove*, 211 F.3d

416, 427 (7th Cir. 2000). There is a presumption in favor of the award of costs, and in order to overcome that presumption, "the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (citing *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991)). Thus, Rule 54(d)(1) establishes "a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006). The Seventh Circuit recognizes "only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent." *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003).

Although the prevailing party is, thus, presumptively entitled to costs, not all of the costs of litigation are recoverable. "[A] district court may not tax costs under Rule 54(d) unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007). The list of recoverable costs pursuant to 28 U.S.C. § 1920 includes: (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness and printing fees and expenses, (4) fees for copies or papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters. 28 U.S.C. § 1920. Taxing costs against the non-prevailing party requires two inquiries: (1) whether the cost is recoverable, and (2) whether the amount assessed is reasonable. *See Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000).

## ANALYSIS

As noted, Plaintiffs have objected to any award of costs on the ground that Defendant has "unclean hands." If any costs are recoverable, Plaintiffs contend, the amounts requested are excessive. The court addresses these objections in turn.

**Alleged Litigation Misconduct**

Plaintiffs have argued that Defendant is barred from recovering any costs under Rule 54(d)(1) based on the "unclean hands" doctrine. (Pl.'s Objs. at 2.) In support of this argument, Plaintiffs first point to the Commission's pre-litigation vote to find "reason to believe" ("RTB") that Plaintiffs might have violated the Federal Elections Campaign Act; that voted resulted in an investigation of Plaintiffs' conduct that, ultimately, failed to bear fruit. (*Id.* at 3-4.) Plaintiffs next detail various incidents that occurred during the course of litigation. (*Id.* at 4-5.) Specifically, Plaintiffs contend that defense counsel regularly objected to discovery requests without a legitimate basis. According to Plaintiffs, this "uncooperative" posture was a "strategy" that resulted in Plaintiffs' incurring substantial expense. (*Id.* at 5.) Plaintiffs note that they were required to move to compel discovery, and in various rulings, the court directed Defendant to comply with those discovery requests. (*Id.* at 4.) Finally, Plaintiffs go to great lengths to detail the perceived strength of their testimony and evidence, ultimately arguing that, although the court ruled in favor of Defendant on the merits, "Plaintiffs should not be penalized, again, with having to incur Defendant's taxable costs." (*Id.* at 2-4.)

The Seventh Circuit has held that, in order for misconduct of the prevailing party to require that costs be denied, that misconduct must be found "worthy of a penalty" and involve "exceptional circumstances." *Congregation of the Passion v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988); *Overbeek v. Heimbecker,* 101 F.3d 1225, 1228 (7th Cir. 1996). Plaintiffs' allegations regarding Defendant's behavior in this case do not approach this level. First, Plaintiffs' arguments tied to the Commission's RTB finding, and subsequent investigation, are irrelevant to the taxing of costs. These matters were the product of the FEC's administrative process and occurred prior to litigation. Although Plaintiffs may very well have been inconvenienced by this process, and found it unfair, it does not support a finding of misconduct in the instant case. Indeed, Plaintiffs offer no legal support for such an argument.

Plaintiffs are correct that obstruction of discovery might, in some context, constitute the type

3

of "misconduct" that could warrant a denial of costs. The magnitude of Defendant's alleged obstruction in this case, however, falls far short of "exceptional." Discovery disputes are, by definition, contentious. The disputes in this case were, from the court's perspective, neither remarkably nor obviously motivated by anything more unsavory than a reasonably aggressive litigation posture.

Plaintiffs' final argument—essentially, that their case was sufficiently strong so as to merit a denial of costs *in toto*–fails, as well. In *Popeil Bros., Inc. v. Schick Electronics, Inc.*, the Seventh Circuit specifically addressed the question of whether the good faith and credibility of the nonprevailing party's case can justify denial of costs. The answer is no: "If the awarding of costs could be thwarted every time the unsuccessful party is a normal, average party and not a knave, Rule 54(d) would have little substance remaining." 516 F.2d 772, 776 (7th Cir. 1975). In other words, "[m]ore than just a showing of good faith is necessary to immunize the losing party from paying costs." *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1236 (7th Cir. 1985).

Plaintiffs' objection to any award of costs in this case is overruled.

**Reasonableness of Claimed Costs**

Plaintiffs urge, in the alternative, that this court should disallow certain costs requested by Defendant. (Pl.'s Objs. at 5.) In particular, Plaintiffs challenge Defendant's claim of costs for travel and lodging, for the videotaped deposition of an out-of-town deponent, and for assorted transcript expenses.[1] Plaintiffs' objections to these specific costs will be considered in turn.

---

[1] Plaintiffs also urge this court to disallow the internet and ATM fees claimed by two witnesses, M. Kendall Day and Thomas Anderson, as such fees are not contemplated under 28 U.S.C. §§ 1920 or 1821. (Pl.'s Objs. at 6.) Although such fees do appear on the schedules of expenses of Andersen and Day, Defendant has subtracted these fees in calculating the final bill of costs. (Bill of Costs at 2, Bill of Costs Ex. B, at B-04, Bill of Costs Ex. C, at C-0004.) The court need not address this objection further.

**1.      Travel and Lodging Expenses**

Defendant's bill of costs includes, as "fees for witnesses," the lodging and *per diem* charges for five traveling witnesses, as well as the attendance cost and mileage for one non-traveling witness. The total of these fees is $3,585.89.[2]  (Bill of Costs at 1.)  The bill of costs also includes the transportation costs for these five witnesses, under "other costs," which are listed at $1,559.40.[3] (*Id.*)  Costs to reimburse witnesses for reasonable travel expenses are recoverable. *See Majeske v. City of Chicago*, 218 F.3d 816, 825-26 (7th Cir. 2000) ("[C]ollectively, 28 U.S.C. §§ 1821 and 1920(3) authorize the award of costs to reimburse witnesses for their reasonable travel and lodging expenses.").  Plaintiffs urge, however, that certain of Defendant's claimed travel and lodging costs are unreasonable.

First, Plaintiffs object to the cost of three nights of hotel charges and three days' per diem cots for witnesses Andersen, Hearron, Olaya, and Shonkwiler. (Pl.'s Objs. at 5, 6.) These charges are excessive, Plaintiffs contend, in light of the fact that the trial lasted just two days, Wednesday and Thursday, August 25–26, 2010, and concluded on Thursday afternoon.  (*Id.*)  In fact, one additional witness, Mr. Day, flew back to Washington after the trial ended on Thursday. (*Id.*) In response, Defendant directs this court's attention to the Final Pretrial Order, in which Plaintiffs estimated that the trial would take "3 or 4 days to complete." (Federal Election Commission's Rep. in Supp. of its Bill of Costs (hereinafter "Def.'s Rep."), at 8; Final Pretrial Order, Ex. 1 to Def.'s Rep., at 4.)  Defendant contends it relied on this projection in making hotel reservations for the majority

---

[2]     Defendant's requested fee for each witness is as follows: Thomas Andersen (4 days, $857.80), M. Kendall Day (3 days, $583.70), Roger Hearron (4 days, $857.80), Phillip Olaya (4 days, $654.70), Mark Shonkwiler (3 days, $583.70), and Audra Wassom Bayes ($48.19, including $40 attendance cost and $8.19 mileage cost).  (Bill of Costs at 2.)

[3]     Defendant's claimed costs for travel are as follows: Andersen ($308.90), Day ($362.25), Hearron ($383.45), Olaya ($239.90), and Shonkwiler ($264.90). (Summers Decl., Attach. 1 to Bill of Costs, at 2.)

of witnesses for 3 nights.[4] (Def.'s Rep. at 8.) Plaintiffs have cited only *Majeske v. City of Chicago* for the general proposition that "assessed costs must be reasonable." 218 F.3d 816, 824 (7th Cir. 2000). This court finds Defendant's prudent advance planning entirely reasonable, and concludes that Defendant is entitled to recovery of the *per diem* charges it incurred, as well.

Plaintiffs broadly dispute the costs requested for ground transportation, claiming they are excessive and unsupported by documentation. (Pl.'s Objs. at 6.) Plaintiffs' particular dispute, however, involves the claimed taxi fare of $50 for Mr. Hearron's commute from Chicago O'Hare International Airport ("O'Hare") to The Palmer House Hilton, and $47.55 for his return. (*Id.*) Plaintiffs claim that another witness, Mr. Olaya, repeatedly managed to travel to his hotel from O'Hare for an average of $27.10.[5] (Id.) Defendants make a number of counterarguments, including pointing out that the $50 trip in from O'Hare involved transporting another witness, Thomas Anderson, as well. (Def.'s Rep. at 8.) Although the court is reluctant to engage in substantial independent research, a $50 charge appears completely reasonable. *See Taxi Fare Finder Chicago,* http://www.taxifarefinder.com/main.php?city=Chicago (last visited September 21, 2011) (estimated taxi fare from O'Hare to Palmer House: $46.95.) This objection is overruled.

Plaintiffs also urge the court to reject Defendant's overall claims for transportation costs. They note with suspicion that some witnesses claim an expense of $383.45 (Hearron) while others claim a much lower amount, $239.90, for this travel (Olaya). (Pl.'s Objs. at 6.) In Plaintiffs' view, it is "impossible to calculate or explain the differences between these [transportation] costs." (*Id.*) Plaintiffs' difficulty is puzzling; Plaintiffs themselves note that Hearron incurred nearly $100 in taxi

---

[4] Defendant also notes that the trial ended at 3:46 p.m. on August 26—too late to avoid incurring hotel charges for the third night. (Def.'s Rep. at 8.) The court presumes that, even if Defendant could have canceled the hotel reservations, it would have been difficult and undoubtedly costly to make changes in the flight arrangements.

[5] This court suspects that Plaintiffs misread Mr. Olaya's claimed daily amounts for his "hotel *tax*"—which are all *exactly* $27.10—as his "hotel *taxi*." Bill of Costs Ex. E, at E-03. Otherwise, the source of Plaintiffs' very precise claim regarding "average" taxi fare is unclear.

fares, while Olaya did not; the cab fare difference, along with Hearron's baggage check fees ($23 each way) adequately explain the discrepancy. ( Bill of Costs Ex. D, at D-04; Bill of Costs Ex. E, at E-03.) Any objection based on the difference between overall transportation charges is overruled.

### 2. Deposition Expenses for Audra Wassom Bayes

Defendant seeks recovery for the cost of a videotaped deposition of Wassom Bayes, an FEC staff attorney ($325). Plaintiffs object to this charge, as well, arguing that there was no reason for this deposition to be videotaped. (Pl.'s Objs. at 6.)

The court will award costs for a deposition transcript so long as the deposition appears reasonably necessary in light of the facts known at the time of the deposition. *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). The Seventh Circuit has approved an award for a videotape recording, as well, under appropriate circumstances. *Id.* at 702. In its reply, Defendant explains that Bayes, a new mother, was unable to travel to Chicago for the trial, requiring that her deposition be videotaped for use in lieu of live testimony. (Def.'s Rep. at 10.) *See Z Trim Holdings, Inc. v. Fiberstar, Inc.*, No. 07-cv-161-bbc, 2008 WL 3843507, at *1 (W.D. Wis. Aug. 12, 2008) (approving award for videotape where it was reasonable "for defendant to 'play it safe' by videotaping depositions . . . in circumstances in which there is even a slight chance that the witness may not be present at trial."). Ms. Bayes was an extremely important witness, and the submission of the videotape, in addition to a transcript of the testimony, enabled the court to better evaluate this witness's demeanor and credibility. The costs of the transcript and videotape are approved.

### 3. Fees for Certain Pretrial Transcripts

Plaintiffs object to Defendant's requests for the cost of transcripts from hearings that took place before this court in January and February 2009. (Pl.'s Objs. at 7.) Plaintiff contends that these transcripts were unnecessary and served no purpose other than to add extra items to the bill of costs. (*Id.*) The transcripts, respectively, cost Defendant $25.20 and $82.45. (Bill of Costs,

Summers Decl. at 5.)

"[T]he cost of transcripts for pretrial proceedings are taxable as costs under Rule 54(d)." *Carlson v. Bukovic*, No. 07 C 06, 2009 WL 2448603, at *3 *(N.D. Ill. Aug. 7, 2009) (quoting *Helzing v. Loyola Univ. of Chicago,* No. 02 C 9408, 2004 WL 2608287, at *3 (N.D. Ill. Nov. 16, 2004); *see also SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 944 n.9 (7th Cir. 1988). In a declaration in support of the bill of costs, FEC attorney Harry Summers explains that each of these pretrial transcripts was obtained for a specific purpose. (Summers Decl. at 5.) Summers explained that Defendant obtained an expedited copy of the transcript of the January motion and status hearing because it "confirmed and provided detail about the Court's oral instructions to the Commission concerning discovery tasks that the agency was obliged to undertake promptly . . . and also included the Court's guidance regarding the proper scope of discovery." (*Id.*) The transcript of the February motion hearing, similarly, was "necessary to allow the Commission to ensure that [P]laintiffs kept within the limits the Court set for then-upcoming depositions." (*Id.*)

Plaintiff has not effectively challenged this explanation, and the court has no reason to doubt Summers. Plaintiffs' objection to the costs for obtaining these transcripts is overruled, as well.

## **CONCLUSION**

Costs are awarded in the total requested amount of $8,300.64.

ENTER:

Dated: September 22, 2011

_____
REBECCA R. PALLMEYER
United States District Judge